# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RYAN CRISTMAN, individually and on behalf of all others similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>DRAFTKINGS INC., a Nevada corporation,<br><br> Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Ryan Cristman, by and through his attorneys, brings this Class Action Complaint and Demand for Jury Trial against Defendant DraftKings Inc. ("DraftKings") based on its breach of contract. Plaintiff, individually and on behalf of all others similarly situated, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. DraftKings prides itself on offering a "safe, secure online sports betting platform."[1] Prior to its launch of its sports betting ("Sportsbook") app in Michigan, DraftKings CEO, Jason Robins, stated "[w]e are confident that our mutual commitment to product innovation and customer experience will serve as a solid foundation as we soon introduce Michiganders to the signature DraftKings experience."[2]

---

[1] DRAFTKINGS, *Overview*, https://www.draftkings.com/about/sportsbook/ (last visited May 12, 2021).
[2] DRAFTKINGS, *DraftKings Mobile Sportsbook and iGaming to Arrive in Michigan on January 22nd*,

2. Unfortunately, the "signature DraftKings experience" offered by Defendant involves the systemic practice of refusing to pay winning wagers to customers who are contractually entitled to them.

3. DraftKings failed to honor the winning wagers its customers paid for by incorrectly marking the wagers as losses and, as a result, prevented their customers from receiving the payout that they were entitled to.

4. Accordingly, this putative class action seeks (i) damages for Plaintiff and a class of similarly situated individuals who fulfilled their obligations under their agreement with DraftKings, by paying money for a wager in Defendant's Sportsbook, and were injured when Defendant DraftKings breached its obligation under the contract by incorrectly marking winning wagers as a loss and refusing to pay the amount these customers were contractually entitled to; and (ii) to prevent Defendant from continuing to breach these contracts by refusing to pay winning wagers.

## PARTIES

5. Plaintiff Ryan Cristman is a natural person and citizen of the State of Michigan.

6. Defendant DraftKings Inc. is a digital sports entertainment and gaming company organized under the laws of Nevada, with headquarters located at 222 Berkeley Street, 5th Floor, Boston, Massachusetts 02116.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply

---

https://www.draftkings.com/about/news/2021/01/draftkings-mobile-sportsbook-and-igaming-to-arrive-in-michigan-on-january-22/ (last visited May 12, 2021).

to this action.

8. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of Michigan and because a substantial part of the events giving rise to Plaintiff's claim occurred in Michigan, as Defendant offered its odds in its Sportsbook to Plaintiff in Michigan, and Plaintiff accepted the odds and paid to place a wager in Michigan.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because a substantial part of the events or omissions giving rise to the Plaintiff's and the putative Class's claims arose, in a substantial part, in this District.

## COMMON FACTUAL ALLEGATIONS

10. DraftKings is a digital sports entertainment and gaming company that offers daily fantasy sports, Sportsbook, and online casino. DraftKings was founded in 2012 and quickly made a name for itself as a leading provider of daily fantasy sports.[3] Beginning in 2018, DraftKings began offering its Sportsbook, which, according to them is "[t]he top-rated app in the country" with over 10 million registered users.[4]

11. DraftKings' Sportsbook is a comprehensive sports-betting platform that offers customers a variety of ways to place bets on various sporting events.

12. Sports betting involves a customer wagering money on an event at some fixed odds determined by the bookmaker, in this case, DraftKings.[5] Odds are

---

[3] Scott Kirsner, *Two Local Companies, StarStreet and DraftKings, Prepare to Launch New Fantasy Sports Sites*, http://archive.boston.com/business/technology/innoeco/2012/02/two_local_compa nies_starstreet.html (last visited May 12, 2021).

[4] DRAFTKINGS, *Overview*, *supra* n.1.

[5] DRAFTKINGS, *Frequently Asked Questions*, https://sportsbook.draftkings.com/help/faq (last accessed May 12, 2021).

3

associated with each team involved in the bet and are based on their probability of winning.[6] Odds for the team that is favored to win is indicated with a ("-"), while odds for the underdog team are associated with a ("+"). If a bettor places a successful $100 bet on a team with +250 odds, that bettor stands to win $250. Alternatively, a bettor who places a successful $250 bet on a team with -250 odds will stand to win $100.

13. DraftKings earns revenue through their Sportsbook by calculating the betting markets that have been resolved and subtracting the total payouts from these markets. If the user wins, DraftKings is expected to pay out the bet.

14. One type of bet specific to hockey is the puck line. A puck line bet is based on a goal spread. Under a puck line bet, a team can be given either a positive ("+") or negative ("-") number of goals. For example, if Detroit is playing and they are given +1.5 goals at odds of -110, Detroit bettors will win their wager if Detroit wins the game or loses by one goal. In the alternative, if Detroit was given -1.5 goals and odds of -110, Detroit bettors will only win their wager if Detroit wins by more than one goal.[7]

15. Unfortunately, despite offering odds that Defendant DraftKings sets itself, and accepting money from customers looking to place bets in Defendant's Sportsbook, Defendant refuses to payout winning wagers.

### FACTS SPECIFIC TO PLAINTIFF CRISTMAN

16. Plaintiff Ryan Cristman opened a DraftKings Sportsbook account in February 2021 and placed his first wager on the DraftKings Sportsbook on February 8, 2021.

---

[6] DRAFTKINGS, *How to Bet 101*, https://sportsbook.draftkings.com/help/how-to-bet (last accessed May 12, 2021).
[7] DRAFTKINGS, *How to Bet on Hockey*, https://sportsbook.draftkings.com/help/how-to-bet/hockey-betting-guide (last accessed May 12, 2021).

17. On February 10, 2021, Plaintiff placed a wager in Defendant's Sportsbook (the "Bet"). The Bet was offered by Defendant as a puck line bet on a hockey game on that same day between the Boston Bruins and the New York Rangers (the "Game"), where the Boston Bruins were given +3 goals in regular time with odds of +510. Plaintiff wagered $915.89, and if the Bet was successful, stood to receive a payout of $5,586.93. *See* Figure 1.



(Figure 1.)

18. Indeed, Plaintiff relied on DraftKings' representations about the odds offered and the payout he would receive if he won the Bet.

19. Shortly after the Bet was placed, but prior to the start of the Game, Plaintiff contacted DraftKings' customer support to confirm that these were in fact the correct odds. The DraftKings agent told Plaintiff that the odds were correct and

wished him the best of luck and that they are "hoping to see you win." See Figure 2.



(Figure 2.)

20. During the Game, and prior to the expiration of regular time, Plaintiff again reached out to DraftKings customer support after he noticed that his Bet receipt was incorrectly showing his Bet placed as -3 for the Boston Bruins, rather than +3. See Figure 3, showing a screenshot of Plaintiff's Bet receipt during regular time of the Game.



(Figure 3.)

21. Despite answering Plaintiff within minutes of him initially reaching out, this message was left unanswered for hours, until after the Game had concluded.

22. The Game ended regular time with a score of 2-2.[8] Meaning, Plaintiff had won his Bet as Boston did not lose by more than three goals.

23. Immediately following the completion of Game, Plaintiff logged into the DraftKings app to view and withdraw his winnings.

24. Despite the Game finishing regular time tied 2-2, to Plaintiff's

---

[8] NHL, *February 10, 2021 Scores*, https://www.nhl.com/scores/2021-02-10 (last accessed May 12, 2021).

7

surprise, his Bet was marked as a loss. *See* Figure 4.



(Figure 4.)

25.  Plaintiff again contacted DraftKings customer support. The customer support agent told Plaintiff that his Bet will stand as a loss and that "the terms of the bet are displaying correctly in the bet-slip prior to placement." *See* Figure 5.

8

> Zac A. (DraftKings)
>
> Feb 10, 2021, 11:28 PM EST
>
> Hello Ryan,
>
> Thank you for contacting DraftKings.
>
> We have reviewed your wager, and it will stand as a loss.
>
> There was a display issue on the event interface, but the terms of the bet are displaying correctly in the bet slip prior to bet placement. We apologize for this issue. We have refunded your wager back to you and also credited your account a $50 free bet.
>
> We apologize again for any confusion this may have caused. Please reach out to us if you have any questions.
>
> Best,
>
> Zac
> DraftKings Player Advocate
>
> RCristman248
>
> Feb 10, 2021, 11:28 PM EST
>
> I see you only put back the original wager via admin adjustment... That DOESNT SUFFICE. I WON MY BET! ADD MY PROFITS!! I tied up my whole $900 because the odds were so good! I could've placed other bets! I won $5500+!!!! Add my profits please and thank you!!!!!

(Figure 5.)

26. When Plaintiff pointed out that his Bet was a winning bet, as the Boston Bruins did not lose by more than three goals, DraftKings customer support ceased to respond to Plaintiff's messages and locked Plaintiff's account in retaliation.

27. With a locked account, Plaintiff was unable to access the funds in his account.

28. When Defendant finally did respond to Plaintiff, they told Plaintiff that his Bet will stand as a loss. *See* Figure 6.

9



(Figure 6.)

29. As a result of Defendant's unilateral and unjustified breach of contract, Plaintiff lost the value of his winning Bet, was prevented from accessing his account, and was unable to place other wagers.

## CLASS ACTION ALLEGATIONS

30. **Class Definition**: Plaintiff Cristman brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a class of all others similarly situated, defined as follows:

> **Class**: All persons in the United States who placed a winning wager on DraftKings' Sportsbook that DraftKings incorrectly declared as a loss.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or

former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated by a court of law on the merits; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31. **Numerosity:** The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. All Class members may be notified of the pendency of this action by reference to DraftKings' records, or by other alternative means.

32. **Commonality:** Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

    a. Whether Defendant incorrectly marked Plaintiff's and Class members' winning wagers as a loss; and

    b. Whether Defendant's conduct constitutes a breach of contract.

33. **Typicality:** The claims of the named Plaintiff are typical of the claims of the proposed Class in that the Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

34. **Adequate Representation:** Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions in federal court, and they will vigorously litigate this class action on his behalf and on behalf of the class.

35. **Predominance and Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for DraftKings' wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will permit an orderly and expeditious administration of the claims of the Class, will foster economies of time, effort, and expense, and will insure uniformity of decisions. The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

37. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendant. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications

with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as DraftKings has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

39. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing DraftKings' conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

40. Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

**CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth

herein.

42. Plaintiff and the Class members entered into a valid and enforceable agreement with Defendant DraftKings to place a wager in Defendant's Sportsbook at the agreed upon odds and agreed to pay money for such wager.

43. A material part of the agreement between Defendant DraftKings and Plaintiff Cristman and Class members was to provide a payout for a winning wager at the agreed upon odds and not incorrectly mark a winning wager as a loss.

44. A meeting of the minds occurred, and Plaintiff and the Class fully performed their obligations under the contract by paying money for their wagers.

45. Defendant breached the contract with Plaintiff Cristman and the Class members by incorrectly marking their winning wagers as a loss and refusing to pay Plaintiff and the Class members the payout they should have received if their wagers were marked correctly.

46. Plaintiff and the Class would not have paid to place a wager on Defendant's Sportsbook had they known their wagers would not be correctly marked, but rather would have chosen one of the numerous alternatives that were available to them and which did not present the risk of being cheated from their winnings.

47. Defendant's failure to fulfill its promises resulted in Plaintiff Cristman and Class members receiving payouts that were of less value than they paid for. Stated otherwise, because Plaintiff Cristman and Class members paid for agreed upon odds that they did not receive—even though such odds were a material part of their contracts with the Defendant—they did not receive the full benefit of the bargain. As a result of Defendant's breach, Plaintiff Cristman and the Class suffered damages in the amount of the difference between what their winning wager should have returned as promised and the actual diminished value of it being treated as a loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ryan Cristman, individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff Cristman as the representative of the Class and appointing his counsel as Class Counsel;

(b) Finding that Defendant's actions, as set out above, constitute a breach of contract;

(c) Awarding damages, including statutory, exemplary, and punitive damages;

(d) Awarding Plaintiff and the Class reasonable litigation costs and attorneys' fees;

(e) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

(f) Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

(g) Awarding such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**RYAN CRISTMAN**, individually and on behalf of all others similarly situated,

Dated: May 12, 2021

By: /s/Ari J. Scharg
*One of Plaintiff's Attorneys*

Henry M. Scharg
hmsattyatlaw@aol.com
Law Office of Henry M. Scharg
30445 Northwestern Hwy, Suite 225
Farmington Hills, Michigan 48334
Tel: 248.596.1111
Fax: 248.671.0335

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*